1 | (Eddie) Jae Kook Kim (Cal. Bar No. 236805)
(ekim@carlsonlynch.com)

2 | **CARLSON LYNCH LLP**
117 E. Colorado Blvd., Ste. 600

3 | Pasadena, CA 92101
Tel:   (619) 762-1910

4 |

5 | *Attorneys for Plaintiffs and*
*Proposed Class Counsel*

6 | *[Additional Counsel on Signature Page]*

7 |

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | STEVEN VANCE and TIM JANECYK, for themselves and others similarly situated,

Case No. 2:20-cv-06244-DMG-KS

11 | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S AMENDED MOTION TO DISMISS CLASS ACTION COMPLAINT**

12 | Plaintiffs,

13 | v.

Date:   January 8, 2021
Time:   9:30 a.m.
Judge: Hon. Dolly M. Gee
Place:  Courtroom 8C

14 | FACEFIRST, INC.,

15 | Defendant.

16 | Complaint Filed:   July 14, 2020
Trial Date:       None Set

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

1

## **TABLE OF CONTENTS**

2

**Page**

3  INTRODUCTION ................................................................................1

4  REQUEST FOR JUDICIAL NOTICE.....................................................2

5  FACTUAL BACKGROUND....................................................................2

6      I.     The Illinois Biometric Information Privacy Act.........................2

7      II.    Defendant's Unlawful Obtainment and Use of Plaintiffs' Biometric Data 3

8  ARGUMENT .......................................................................................3

9  Standard of Review............................................................................3

10      I.     Illinois' Extraterritoriality Doctrine Does Not Bar Plaintiffs' BIPA Claims...........................................................................................4

11            A.    Defendant's Extraterritoriality Argument Is Premature. .................4

12  
13            B.    The Relevant "Circumstances" of This Case Occurred "Primarily and Substantially" in Illinois. ...........................................5

14      II.    BIPA Does Not Violate the Dormant Commerce Clause..........................7

15            A.    Legal Standards...............................................................7

16            B.    BIPA Does Not Directly Control Commerce Occurring Wholly Outside of Illinois. ...........................................................9

17  
18            C.    BIPA Does Not Project Illinois' Regulatory Scheme onto California or Preclude its Facial Recognition Research.................11

19      III.    BIPA Applies to Biometric Data Derived from Photographs...................14

20      IV.    Plaintiffs Have Adequately Alleged a § 15(b) Violation Because Defendant Collected, Obtained, and Used Their Biometric Data without

21          Notice and Consent. ...................................................................18

22      V.    Plaintiffs Have Adequately Alleged that Defendant Profited from the Biometric Data of Plaintiffs and Class Members. ....................................21

23  
24      VI.    Plaintiffs Have Adequately Pled a Claim for Unjust Enrichment. ...........23

    CONCLUSION....................................................................................23

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ades v. Omni Hotels Mgm't Corp.*,
  46 F. Supp. 3d 999 (C.D. Cal. 2014) ...................................................8, 12

*American Booksellers Foundation v. Dean*,
  342 F.3d 96 (2d Cir. 2003) .............................................................13, 14

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
  729 F.3d 937 (9th Cir. 2013) ..................................................................9

*Avery v. State Farm Mut. Auto. Ins. Co.*,
  835 N.E.2d 801 (Ill. 2005) ...............................................................4, 5

*Bosch Solar Energy Corp.*,
  443 F. Supp. 3d 1060 (N.D. Cal. 2020) ...............................................23

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*,
  476 U.S. 573 (1986) ..............................................................................10

*Bryant v. Compass Grp USA, Inc.*,
  958 F.3d 617 (7th Cir. 2020) ..................................................................6

*Carcieri v. Salazar*,
  555 U.S. 379 (2009) ..............................................................................17

*Chinatown Neighborhood Ass'n v. Harris*,
  794 F.3d 1136 (9th Cir. 2015) ........................................................7, 8, 9

*Connecticut Nat. Bank v. Germain*,
  503 U.S. 249 (1992) ..............................................................................22

*Dep't of Revenue v. Blixseth*,
  942 F.3d 1179 (9th Cir. 2019) ..............................................................17

*Figueroa v. Kronos, Inc.*,
  454 F.Supp.3d 772 (N.D. Ill. 2020) .....................................................19

*Gravquick A/S v. Trimble Navig. Int'l Ltd.*,
  323 F.3d 1219 (9th Cir. 2003) ................................................................7

*Healy v. Beer Inst., Inc.*,
  491 U.S. 324 (1989) ................................................................................9

*Heard v. Becton, Dickinson & Co.*,
  440 F.Supp.3d 960 ................................................................................20

*In re Facebook Biometric Info. Privacy Litig.*,
  185 F.Supp.3d 1155 (N.D. Cal. 2016) ...............................11, 15, 16, 19

*In re Facebook Biometric Info. Privacy Litig.*,
  326 F.R.D. 535 (N.D. Cal. 2018) ............................................................5

1

## <u>TABLE OF AUTHORITIES (cont.)</u>

2

**Page(s)**

3

**Cases (cont.)**

4

*In re Facebook Biometric Info. Privacy Litig.,*
No. 3:15-cv-3747-JD, 2018 WL 2197546 (N.D. Cal. May 14, 2018).......................7

5

6

*In re Tracht Gut, LLC,*
836 F.3d 1146 (9th Cir. 2016).........................................................................................3

7

*Keates v. Koile,*
883 F.3d 1228 (9th Cir. 2018).........................................................................................3

8

9

*Monroy v. Shutterfly, Inc.,*
No. 16 C 10984, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017).........................passim

10

*Morrison v. YTB Intern., Inc.,*
649 F.3d 533 (7th Cir. 2011)....................................................................................4, 18

11

12

*Namuwonge v. Kronos, Inc.,*
418 F.Supp.3d 279 (N.D. Ill. 2019) ............................................................................20

13

*Nathanson v. Polycom, Inc.,*
No. 13-cv-3476, 2015 WL 12964727 (N.D. Cal. Apr. 16, 2015)............................10

14

15

*Nat'l Ass'n of Optometrists and Opticians v. Harris,*
682 F.3d 1144 (9th Cir. 2012).........................................................................................8

16

*Nat'l Fed'n of the Blind v. Target Corp.,*
452 F.Supp.2d 946 (N.D. Cal. 2006) ....................................................8, 12, 13, 14

17

18

*Neals v. PAR Tech. Corp.,*
419 F.Supp.3d 1088 (N.D. Ill. 2019) .......................................................................5, 6

19

*Norberg v. Shutterfly, Inc.,*
152 F.Supp.3d 1103 (N.D. Ill. 2015) ..........................................................15, 19, 20

20

*Patel v. Facebook, Inc.,*
932 F.3d 1264 (9th Cir. 2019)..................................................................................4, 5, 6

21

22

*Pooh-Bah Enter., Inc v. Cnty of Cook,*
905 N.E.2d 781 (Ill. 2009) ............................................................................................22

23

*Quadion Corp. v. Mache,*
738 F.Supp. 270 (N.D. Ill. 1990) ...............................................................................23

24

25

*Rivera v. Google Inc.,*
238 F. Supp. 3d 1088 (N.D. Ill. 2017) ...............................................................passim

26

*Rocky Mountain Farmers Union v. Corey,*
730 F.3d 1070 (2013) ............................................................................................8, 9, 11

27

28

*Rosenbach v. Six Flags Entm't Corp.,*
129 N.E.3d 1197 (Ill. 2019) ...............................................................................1, 20, 22

# <u>TABLE OF AUTHORITIES (cont.)</u>

**Page(s)**

**Cases (cont.)**

*Sam Francis Found. v. Christies, Inc.*,
  784 F.3d 1320 (9th Cir. 2015)..................................................................10

*South Dakota v. Wayfair, Inc.*,
  138 S. Ct. 2080 (2018) .............................................................................13

*TelTech Sys., Inc. v. McCollum*,
  No. 08-cv-61664, 2009 WL 10626585 (S.D. Fla. Jul. 16, 2009) ..............10

*Vance v. Int'l Business Machines Corp. ("IBM")*,
  No. 20-cv-577, 2020 WL 5530134 (N.D. Ill. Sept. 15, 2020)...........passim

*Walker v. S.W.I.F.T. SCRL*,
  491 F. Supp. 2d 781 (N.D. Ill. 2007) ..........................................................6

**Statutes**

740 ILCS 14/10.........................................................................................2, 16

740 ILCS 14/15(c) ...................................................................................21, 22

740 ILCS 14/20..............................................................................................12

740 ILCS §14/1...................................................................................1, 2, 9, 11

740 ILCS § 14/5(c) ..........................................................................................3

740 ILCS § 14/15(b) .........................................................................16, 18, 20

740 ILCS §§ 14/15(b)-(c) ................................................................................2

Cal. Civ. Code § 1798.100...............................................................................11

# INTRODUCTION

This is a case about Illinois residents' ability to protect their biometric data and privacy. The Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS §14/1, *et seq.*, "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197, 1206 (Ill. 2019). The Class Action Complaint ("Complaint") of Plaintiffs Steven Vance and Tim Janecyk ("Plaintiffs") arises from Defendant FaceFirst, Inc.'s ("FaceFirst" or "Defendant") secretive practice of downloading and using Illinois residents' biometric identifiers and information ("Biometric Data") without their knowledge or consent to develop its facial recognition software.  Specifically, that Defendant deprived Plaintiffs and putative Illinois class members ("Class Members") of their statutorily-guaranteed rights when it collected, obtained, used and profited from their Biometric Data without providing the notice and obtaining the consent required by BIPA. This invasive and predatory use of Biometric Data is exactly what BIPA is meant to thwart.

While Defendant argues that BIPA violates Illinois' extraterritoriality doctrine and the dormant Commerce Clause, courts have overwhelmingly rejected these arguments, especially at this early stage. Plaintiffs' allegations and the reasonable inferences therefrom make clear that the relevant conduct and harms at issue occurred in Illinois.

Defendant's remaining arguments likewise fail. No court has found that BIPA exempts Biometric Data derived from scans of photographs. Any other conclusion would gut BIPA's express goal of allowing Illinois residents to control their Biometric Data. Defendant's claim that BIPA does not actually mean what it says—*i.e.*, that §15(b) does not apply to entities that "obtain" Biometric Data and that § 15(c) does not prohibit entities from "profiting" from Biometric Data—ignores basic canons of statutory construction and is premised on a misinterpretation of existing authority.  Defendant's argument for dismissal of Plaintiffs' unjust enrichment claim fares no better. To the

extent it rises and falls with Plaintiffs' BIPA claims, it cannot be dismissed for the same reasons the BIPA claims cannot be dismissed.  Nor does Plaintiffs' unjust enrichment claim impermissibly seek restitution because it is brought in the alternative.

Notably, a court in the Northern District of Illinois recently denied a motion to dismiss in a BIPA case based on many of the same arguments Defendant makes here. *See Vance v. Int'l Business Machines Corp.* ("*IBM*"), No. 20-cv-577, 2020 WL 5530134 (N.D. Ill. Sept. 15, 2020). In that case, Plaintiffs sued International Business Machines Corporation ("IBM") based on the same Diversity in Faces biometric dataset (the "Dataset") at issue in this case. Just as the court in *IBM* denied the defendant's motion to dismiss, this Court should do the same here.

## REQUEST FOR JUDICIAL NOTICE

Plaintiffs request that the Court consider Exhibit A to the Declaration of Nicholas R. Lange in Support of Plaintiffs' Opposition to Defendant's Motion to Stay Case ("Lange Decl."), which is filed concurrently with this memorandum.

## FACTUAL BACKGROUND

### I.   The Illinois Biometric Information Privacy Act

BIPA strictly regulates an individual's Biometric Data. *See* 740 ILCS § 14/1, *et seq.* Under Illinois law, biometric identifiers include a "scan of . . . face geometry," and biometric information is "any information . . . based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10. BIPA prohibits a private entity from, among other things: (a) collecting, capturing or otherwise obtaining an individual's Biometric Data without providing written notice and obtaining a written release; and (b) selling, leasing, trading or otherwise profiting from an individual's Biometric Data. *See* 740 ILCS §§ 14/15(b)-(c).

In enacting BIPA, the Illinois General Assembly recognized the sensitive and unique nature of Biometric Data:

> Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the

2

1     individual has no recourse, is at heightened risk for identity theft, and is
2     likely to withdraw from biometric-facilitated transactions.

3     740 ILCS § 14/5(c).

4     **II.    Defendant's Unlawful Obtainment and Use of Plaintiffs' Biometric Data**

5          At relevant times, Plaintiffs Steven Vance and Tim Janecyk were and remain

6     Illinois residents. Dkt. 1 ¶¶ 6-7. Both Plaintiffs used the photo-sharing site Flickr and

7     uploaded the photographs at issue to Flickr from their computers in Illinois. *Id.* ¶¶ 60,

8     69.

9          In violation of BIPA, Defendant collected, obtained, used, and profited from

10    Plaintiffs' and Class Members' Biometric Data. *See id.* ¶¶ 52-58, 63,71. Specifically,

11    Defendant obtained IBM's biometric Dataset, which IBM had created by performing

12    facial geometric scans on photographs that had been uploaded to Flickr, including

13    Plaintiffs' photographs.  *Id.* ¶¶ 28-32, 40-44, 55-58. Defendant used the Dataset to

14    improve its facial recognition software and generate profits. *Id.* ¶¶ 52-58, 77. The

15    Dataset included the Biometric Data, the underlying photographs, and corresponding

16    metadata (including geo-tags relating to where the photograph was taken or uploaded),

17    and links to the Flickr profile of each photograph's owner. *Id.* ¶¶ 46-47, 50-51. Plaintiffs'

18    Flickr profiles made clear that they are Illinois residents. *Id.* ¶¶ 62, 64, 70, 72. IBM and

19    Defendant failed to notify or receive the consent of the individuals appearing in the

20    photographs regarding the collection of their Biometric Data. *Id.* ¶¶ 45, 64-66, 72-74,

21    94.

22    **ARGUMENT**

23    **Standard of Review**

24         At the motion to dismiss stage, the court "take[s] all well-pleaded factual

25    allegations in the complaint as true, construing them in the light most favorable to the

26    nonmoving party." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018). The court must

27    "draw all reasonable inferences in favor of the plaintiff." *In re Tracht Gut, LLC*, 836

28    F.3d 1146, 1150 (9th Cir. 2016).

I.    **Illinois' Extraterritoriality Doctrine Does Not Bar Plaintiffs' BIPA Claims.**

    A.    **Defendant's Extraterritoriality Argument Is Premature.**

Defendant contends that Illinois' extraterritoriality doctrine bars Plaintiffs' BIPA claims. Dkt. 53 at 14-17.[1] Courts have soundly rejected this contention, especially at this early stage. *See IBM*, 2020 WL 5530134, at *3; s*ee also Patel v. Facebook, Inc*., 932 F.3d 1264, 1275-76 (9th Cir. 2019); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1100-02 (N.D. Ill. 2017); *Monroy v. Shutterfly, Inc*., No. 16 C 10984, 2017 WL 4099846, at *5-7 (N.D. Ill. Sept. 15, 2017). According to the Illinois Supreme Court, "there is no single formula or bright-line test for determining whether a transaction occurs within this state. Rather, each case *must be decided on its own facts.*" *Avery v. State Farm Mut. Auto. Ins. Co.,* 835 N.E.2d 801, 854 (Ill. 2005) (emphasis added); *see also Morrison v. YTB Intern., Inc.*, 649 F.3d 533, 538 (7th Cir. 2011).

Prior to filing this case, Plaintiffs sued IBM for alleged BIPA violations in connection with the Dataset. *See IBM*, 2020 WL 5530134, at *1. As here, no direct relationship existed between IBM and Plaintiffs, and Plaintiffs did not upload their photographs directly to IBM. *See id.* at *1. Like Defendant, IBM sought dismissal on extraterritoriality grounds. *Id.* at *3. The court denied the motion, holding that the determination of whether the events giving rise to the suit occurred primarily and substantially in Illinois "is a highly fact-based analysis that is generally inappropriate for the motion to dismiss stage." *Id.*; *see also Rivera*, 238 F.Supp.3d at 1100-02; *Monroy*, 2017 WL 4099846, at *5-7. The same is true here.

Defendant disputes this conclusion, arguing that dismissal is not premature because Plaintiffs did not upload their photographs directly to Defendant's systems from an Illinois device. Dkt. 53 at 16-17. The distinction is meaningless and inaccurate. *IBM* did not involve plaintiffs who uploaded their photographs directly to the defendant's systems, yet the court found IBM's extraterritoriality argument to be premature. 2020 WL 5530134, at *1, 3. Further, *Patel* did not involve class members who necessarily

---

[1] Citations to page numbers of docketed entries are to the ECF page numbers.

uploaded their photographs to Facebook's systems. In *Patel*, the Ninth Circuit: (a) rejected Facebook's contention that Illinois' extraterritoriality doctrine precluded certification of a class of Illinois Facebook users; and (b) premised class membership merely on whether Facebook had created and stored an Illinois user's face template—with no regard as to how Facebook obtained the underlying photograph. *See* 932 F.3d at 1275-76.

## B. The Relevant "Circumstances" of This Case Occurred "Primarily and Substantially" in Illinois.

Under an *Avery* fact analysis, the Court still should deny Defendant's motion because the relevant circumstances of this case occurred primarily and substantially in Illinois. *See* Dkt. 1. Indeed, "[n]one of the class members are non-residents suing under Illinois law, which is the paradigmatic situation for the presumption against the extraterritorial application of local law." *In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 547 (N.D. Cal. 2018) (citing *Avery*, 835 N.E.2d 801); *see* Dkt. 1 ¶¶ 6-7, 82.

In *Avery*, the court found that the relevant circumstances of alleged fraudulent transactions occurred "primarily and substantially" within the state where: (a) the plaintiffs resided; (b) the deception or "failure to disclose" occurred; and (c) the plaintiffs incurred their injury, among other factors. 835 N.E.2d at 854. These factors demonstrate that the relevant circumstances herein occurred primarily and substantially in Illinois.

First, the Complaint alleges that Plaintiffs resided in Illinois and uploaded the relevant photographs from Illinois. Dkt. 1 ¶¶ 6-7, 60, 69. Second, Defendant's "failure to disclose" occurred in Illinois—*i.e.*, Defendant's failure to provide the requisite notice under BIPA or obtain the requisite consent occurred in Illinois. *See Rivera,* 238 F.Supp.3d at 1102 ("lack of consent" occurs where the person is located when deprived of the necessary information); *cf. Neals v. PAR Tech. Corp.,* 419 F.Supp.3d 1088, 1092

(N.D. Ill. 2019) (cited by Defendant; the act of collecting an Illinois resident's data creates the "relationship" regulated by BIPA).

Third, Plaintiffs' injuries occurred in Illinois. *See* Dkt. 1 ¶¶ 76-78. The Seventh Circuit has recently likened a defendant's collection of a victim's Biometric Data without providing notice and obtaining "informed consent" to an invasion of the victim's "private domain, much like an act of trespass would be     . . . ." *See Bryant v. Compass Grp USA, Inc.*, 958 F.3d 617, 624 (7th Cir. 2020). That "invasion" or "trespass" occurs in Illinois, the location of the victim's "private domain." *See id.*

While Defendant claims it did not engage in conduct in Illinois because it acquired the Dataset from IBM (Dkt. 53 at 15-16), that action does not impact the analysis of the relevant considerations discussed above. Defendant failed to provide notice and obtain consent in Illinois, and Defendant injured Plaintiffs and Class Members in Illinois. Thus, to the extent that Defendant claims Plaintiffs merely argue that their residency controls the *Avery* analysis, that is not the case. Further, the Ninth Circuit has observed that "it is reasonable to infer that the [Illinois] General Assembly contemplated BIPA's application to individuals who are located in Illinois, even if some relevant activities occur outside the state." *Patel*, 932 F.3d at 1276.

The cases relied on by Defendant are distinguishable. In *Neals*, the court dismissed a BIPA complaint with leave to replead where, unlike Plaintiffs here, the plaintiff failed to allege where she provided the medium (a fingerprint) from which her Biometric Data was obtained. 419 F.Supp.3d at 1091-92.

*Walker v. S.W.I.F.T. SCRL*, 491 F. Supp. 2d 781, 795 (N.D. Ill. 2007), is similarly distinguishable. There, the court dismissed a consumer fraud claim brought by Illinois plaintiffs against an international cooperative consortium based in Brussels. *Id*. at 785-86. The court dismissed the claim, in part, because "[p]laintiffs do not identify which Illinois public policies were violated by [defendant's] conduct," did not allege that the "alleged disclosures took place in Illinois," and did not allege any financial transactions in Illinois. Here, on the other hand, Plaintiffs' allegations and the reasonable inferences

therefrom: (a) detail at length the privacy policies behind BIPA that Defendant violated; (b) demonstrate that Defendant' failure to provide the notice or obtain the consent required by BIPA occurred in Illinois; (c) demonstrate that Defendant injured Plaintiffs and Class Members in Illinois; and (d) make clear that Plaintiffs uploaded their photographs in Illinois from their Illinois-based Flickr accounts.

## II.   BIPA Does Not Violate the Dormant Commerce Clause.

As Defendant fails to mention, courts have uniformly rejected Defendant's contention that BIPA violates the dormant Commerce Clause, especially at this early stage. *See IBM*, 2020 WL 550134, at *4; *In re Facebook Biometric Info. Privacy Litig.*, No. 3:15-cv-3747-JD, 2018 WL 2197546, at *4 (N.D. Cal. May 14, 2018); *Rivera*, 238 F.Supp.3d at 1102-04; *Monroy*, 2017 WL 4099846, at *7-8. The fact-based nature of dormant Commerce Clause challenges make them inappropriate for resolution at the Rule 12(b)(6) stage. *See IBM*, 2020 WL 550134, at *4; *Rivera*, 238 F.Supp.3d at 1104; *Monroy*, 2017 WL 4099846, at *7-8. Should the Court conduct a dormant Commerce Clause analysis at this early stage, it still should deny Defendant's motion.

### A.   Legal Standards.

While the dormant Commerce Clause limits states' powers, "[n]ot every exercise of state power with some impact on interstate commerce . . . violates the Commerce Clause." *Gravquick A/S v. Trimble Navig. Int'l Ltd.*, 323 F.3d 1219, 1224 (9th Cir. 2003). The Supreme Court has developed a two-tiered approach to determining whether a state economic regulation violates the Commerce Clause. *See Chinatown Neighborhood Ass'n v. Harris* ("*Chinatown*"), 794 F.3d 1136, 1145 (9th Cir. 2015). If a state statute discriminates against or directly regulates interstate commerce, a court should strike down the statute (or challenged application thereof) without additional inquiry. *Id.* However, where a statute only has an indirect effect on interstate commerce, no dormant Commerce Clause violation exists unless the statute's burdens outweigh its putative benefits, making it irrational or unreasonable. *Id.*

A statute "directly regulates" interstate commerce and violates the Commerce Clause where it directly controls commerce taking place *wholly* outside a state's boundaries. *Rocky Mountain Farmers Union v. Corey,* 730 F.3d 1070, 1101 (2013). But if a statute regulates a transaction or relationship "in which at least one party is located in [the regulating state]," as does BIPA, the statute does not regulate extraterritorial conduct for purposes of the "direct regulation" test. *Chinatown*, 794 F.3d at 1146.

States have broad power to enact laws that protect their residents in matters of local concern. *Nat'l Ass'n of Optometrists and Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012). A state "may regulate with reference to local harms" even if the regulation impacts out-of-state entities whose conduct has in-state ramifications. *Corey*, 730 F.3d at 1104.

The dormant Commerce Clause does not demand uniformity in state laws. *Corey*, 730 F.3d at 1104. As the Ninth Circuit has held, "if we were to invalidate a regulation every time another state considered a complementary statute, we would destroy the states' ability to experiment with regulation." *Id.* at 1105.

"[L]egislation that may cause businesses to *decide* to conform nationwide conduct to meet the requirements of a given state does not necessarily constitute direct regulation of out-of-state commerce." *Ades v. Omni Hotels Mgm't Corp.*, 46 F. Supp. 3d 999, 1014 (C.D. Cal. 2014) (emphasis added). "Courts have held that when a defendant *chooses* to manufacture one product for a nationwide market, rather than target its products to comply with state laws, defendant's choice does not implicate the commerce clause." *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F.Supp.2d 946, 961 (N.D. Cal. 2006) (emphasis added). Thus, whether it is a call center (*Ades*), a business operating a website (*Target Corp.*) or fuel producers (*Corey*), a state may permissibly regulate how nationwide businesses interact with its own citizens.

### B. BIPA Does Not Directly Control Commerce Occurring Wholly Outside of Illinois.

BIPA, as applied to Defendant, does not "regulate conduct which occurred entirely outside of Illinois," as Defendant contends (Dkt. 53 at 17), because it does not control commerce wholly outside of Illinois. *See Corey*, 730 F.3d at 1101. In fact, because BIPA is not a price-affirmation statute, Defendant's extraterritoriality-based dormant Commerce Clause argument is misplaced. In "the modern era, the Supreme Court has rarely held that statutes violate the extraterritoriality doctrine." *Corey*, 730 F.3d at 1101. And the Ninth Circuit has held that the two most "prominent cases" where an extraterritorial violation did occur—including *Healy v. Beer Inst., Inc.*, 491 U.S. 324 (1989)—do not apply "to a statute that does not dictate the price of a product and does not tie the price of its in-state products to out-of-state products." *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 951 (9th Cir. 2013); *see also Chinatown,* 794 F.3d at 1146 (9th Cir. 2015).

In all events, because BIPA regulates the relationship between *Illinois residents* and private entities that seek to collect and use their Biometric Data, it does not violate the dormant Commerce Clause. *See Chinatown*, 794 F.3d at 1146; *see also* 740 ILCS 14/1, *et seq*. Any contrary contention by Defendant would be incredible, especially given that Plaintiffs and Class Members are all Illinois residents. Dkt. 1 ¶¶ 6-7, 83.

In a desperate effort to apply the dormant Commerce Clause to BIPA, Defendant ignores BIPA's focus on Illinois residents and contends that the practical effect of Plaintiffs' BIPA claims is to "effectively prohibit companies such as FaceFirst from conducting any research for any purpose using datasets created by third parties." (Dkt. 53 at 17-18). However, BIPA regulates Illinois residents' privacy, not a transaction between IBM and FaceFirst or FaceFirst's research. To the extent BIPA impacts research when conducted by out-of-state companies, it "passes Commerce Clause muster" because those effects "result from the regulation of in-state conduct." *See Chinatown*, 794 F.3d at 1145. Companies like Defendant remain free to use biometric

datasets so long as they do not negligently, recklessly, or intentionally obtain, collect, or profit from the Biometric Data of Illinois residents without providing the requisite notice or obtaining the requisite consent.

Based on the above, the Court should deny Defendant's dormant Commerce Clause challenge.[2]

The authority relied on by Defendant is misplaced. As discussed above, *Healy* is limited to price-affirmation statutes. Similarly, the statute in *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573 (1986), which involved another price affirmation statute, *directly* regulated interstate commerce when it regulated the price paid for alcohol outside of New York.

In *TelTech Sys., Inc. v. McCollum*, No. 08-cv-61664, 2009 WL 10626585, *8 (S.D. Fla. Jul. 16, 2009), *the parties agreed* that a Florida statute prohibiting caller ID spoofing was impossible to comply with because a caller was unable to determine before the call whether the person was located in Florida. *Id*. The summary judgment opinion was made on a fully developed record, and the court specifically conditioned its ruling on the fact that the act's prohibition of out-of-state conduct was *undisputed*. *Id*. As discussed in more detail below, it is not impossible for Defendant to comply with BIPA, and BIPA does not prohibit Defendant's use of large datasets. Defendant could have complied with BIPA before obtaining Plaintiffs' and Class Members' Biometric Data.

Finally, unlike here, the statute at issue in *Sam Francis Found. v. Christies, Inc*., 784 F.3d 1320 (9th Cir. 2015), "facially regulate[d] a commercial transaction that [took] place wholly outside of the State's borders" and did not seek to protect California victims. *Id*. at 1322-24. BIPA facially regulates the relationship between Illinois residents and private entities and seeks to protect Illinois residents from those entities' improper use of their Biometric Data.

---

[2] In doing so, the Court need not weigh BIPA's putative benefits against any purported burdens it creates because Defendant has waived the argument by not addressing it in its motion. *Nathanson v. Polycom, Inc.*, No. 13-cv-3476, 2015 WL 12964727, *1 (N.D. Cal. Apr. 16, 2015) (collecting authority).

1

2

**C.    BIPA Does Not Project Illinois' Regulatory Scheme onto California or Preclude its Facial Recognition Research.**

3

4

5

Relying on *Healy* and by way of footnote, Defendant makes the conclusory contention that BIPA improperly projects Illinois' regulatory scheme onto California. Dkt. 53 at 18-19. Not so.

6

7

8

9

10

11

12

Further, apart from *Healy* having no application to BIPA, *see* § II.B, *supra*, the existence of two state statutes that regulate privacy does not offend the dormant Commerce Clause. *See Corey*, 730 F.3d at 1105. As the Ninth Circuit has recognized, "[s]uccessful [state regulatory] experiments inspire imitation both vertically . . . and horizontally . . . . ." *Id.* at 1105. Thus, "[i]f we [the Ninth Circuit] were to invalidate regulation every time another state considered a complementary statute, we would destroy the states' ability to experiment with regulation." *Id.*

13

14

15

16

17

18

19

BIPA and the California Consumer Privacy Act, Cal. Civ. Code § 1798.100, *et seq.*, are complementary. Both laws seek to protect their residents' privacy by regulating private entities' conduct. *See* 740 ILCS 14/1, *et seq.*; Cal. Civ. Code § 1798.100 *et seq.* These states' experimentation with regulation does not require either state's regulation to be invalidated; nor does it allow California to render BIPA meaningless vis-à-vis California private entities' relationships with Illinois residents. Such experimentation is encouraged.

20

21

22

23

24

25

26

27

At the same time Defendant complains of BIPA's reach, it impliedly seeks to impermissibly project California's regulatory scheme onto Illinois and negate BIPA's privacy protections. *Cf. In re Facebook Biometric Info. Privacy Litig.*, 185 F.Supp.3d 1155, 1169-70 (N.D. Cal. 2016) (rejecting California choice of law provision that would negate BIPA's protections). Taken to the extreme, if California were to pass a law exempting all businesses from liability arising from the collection of Biometric Data, according to Defendant, Illinois could not exercise its legitimate interest in protecting its residents' privacy vis-à-vis California businesses.

28

Defendant's self-serving proclamation that it would be "impossible" to conduct its facial recognition research if the Court enforces BIPA (*see* Dkt. 53 at 17-18) does not withstand scrutiny and relies on improper inferences in Defendant's favor. Plaintiffs allege that information available to Defendant allowed it to determine Plaintiffs' residencies and provided a method for Defendant to contact Plaintiffs. Dkt. 1 ¶¶ 62, 70. With this information, Defendant could have not only learned the residencies of the persons who took each photograph in the Dataset but contacted those individuals to determine the residencies of the people in the photographs. To the extent Defendant could not determine a person's residency, it could have chosen to conduct its research without that image. Defendant's failure to take any of these actions demonstrates its negligence, recklessness or intentional conduct, *see* 740 ILCS 14/20. Conversely, the mere fact that Defendant may have to take steps to comply with BIPA when working with Illinois residents' Biometric Data does not present dormant Commerce Clause issues. In *Ades*, a California federal court rejected a dormant Commerce Clause challenge to a California privacy statute that required an out-of-state call center to identify California callers. 46 F.Supp.3d at 1015-16. Similarly, a California federal court has found that "it is inappropriate at the motion to dismiss stage to assert a commerce clause violation based on the mere fact that [the defendant], at the remedy stage, may ultimately choose to" implement a national remedy to comply with a state regulation. *Target Corp.*, 452 F.Supp.2d at 961. BIPA likewise does not offend the Dormant Commerce Clause.

In any event, as discussed above, Defendant could have lawfully obtained the Dataset under BIPA had it bothered to provide notice to and gather the consent of Plaintiffs and Class Members before acquiring their Biometric Data. As set forth above, Defendant had the ability to do this. Moreover, Defendant could have taken these actions before acquiring any Biometric Data merely by asking that IBM: (a) forward the metadata and links to the corresponding Flickr profiles first; or (b) initially forward a version of the Dataset to Defendant with the Biometric Data redacted. In this way,

Defendant could have gone about contacting the individuals who uploaded the photographs at issue to provide notice to and obtain consent from Plaintiffs and Class Members *before* it obtained their Biometric Data. By this process, Defendant could also have contacted Plaintiffs and Class Members—prior to acquiring their Biometric Data— to confirm the existence and identity of any Illinois residents who are non-Flickr users and who appear in the photographs Defendant wished to use.

Defendant's reliance on authority addressing the regulation of the Internet (*see* Dkt. 53 at 19-20) is misplaced. BIPA does not regulate internet transactions, it regulates Illinois residents' privacy. Moreover, the issue here is not Defendant's act of obtaining the Dataset from IBM or the manner in which it obtained the Dataset. Rather, at issue is Defendant's failure to comply with BIPA's notice and consent provisions.

Moreover, the view that internet commerce requires uniformity is no longer viable. In *Target Corp.*, the court *rejected* the defendant's dormant Commerce Clause challenge. 452 F. Supp. 2d at 958-62. In so doing, the court highlighted that "various commentators have observed that the case which many courts have followed in invalidating state regulation of the internet . . . rests on an incorrect technical understanding of the internet." *Id.* at 961. Moreover, the court found that if only Congress could regulate online activity because of its multistage character, as Defendant seemingly suggests, "a legal vacuum would be created whereby strategic actors could avoid prosecution and violate state laws with impunity." *Id.* at 963-64. As the Supreme Court made clear in *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080 (2018), the dormant Commerce Clause does not prevent States in the twenty-first century from regulating wholly online conduct even if the regulated entity has no physical in-state presence. *Id.* at 2097-2100.

Defendant's reliance on *American Booksellers Foundation v. Dean*, 342 F.3d 96 (2d Cir. 2003) does not change this conclusion. There, a Vermont law imposed liability on out-of-state entities that merely posted a passive website that was *available* to Vermont minors and could be viewed by them, even if the entities never undertook any

"direct" communication with or affirmative act vis-a-vis those minors. *Id.* at 101-02. Unlike *Dean*, Defendant's conduct was not passive vis-à-vis Plaintiffs and Class Members. Defendant proactively obtained the Dataset that included Plaintiffs' and Class Members' Biometric Data without complying with BIPA. As discussed above, Defendant injured Plaintiffs and Class Members in Illinois. That the Dataset also included data belonging to individuals in other states does not lessen the directness of the injury to Plaintiffs and Class Members, nor does it somehow neutralize Illinois's ability to protect its citizens from such harm.

Finally, the court in *Dean* relied on a factual finding that "it remain[ed] difficult for 'publishers' who post information on the internet to limit website access to adult viewers or to viewers from certain states." *Id.* at 99. Here, in contrast: (a) the Complaint's allegations and the reasonable inferences therefrom show that Defendants had the ability to identify and contact Illinois citizens within the dataset (*see* Dkt. 1 ¶¶ 50-51); and, as discussed above, (b) the factual premise underlying the holding in *Dean*, if it was ever correct, is no longer tenable in an age when websites and advertisers can micro-target users based on their zip codes, ages, and other fine-grained factors. *See, e.g.,* Alex P. Miller and Kartik Hosanagar, *How Targeted Ads and Dynamic Pricing Can Perpetuate Bias,* Harvard Business Review (Nov. 8, 2019) (noting that websites can and do treat users differently based on their location); *see also Target*, 452 F. Supp. at 961 ("The commerce clause is not necessarily implicated since Target could choose to make a California-specific website.").

## III.   BIPA Applies to Biometric Data Derived from Photographs.

The Court should reject Defendant's invitation to be the first court to find that collecting, capturing, and obtaining Biometric Data from a photograph exceed BIPA's reach. Defendant's strained interpretation is factually unsound and would turn BIPA on its head and exempt the very practice BIPA was designed to regulate.

At issue is whether an entity violates BIPA when it obtains a person's Biometric Data by scanning his or her facial geometry. Courts have uniformly found that BIPA

applies to facial scans performed on photographs, rejecting the categorical exemption Defendant urges. *IBM*, 2020 WL 5530134, at *4-5; *Rivera*, 238 F.Supp.3d at 1092-1100; *Monroy* 2017 WL 4099846, at *2-5; *Norberg v. Shutterfly, Inc.,* 152 F.Supp.3d 1103, 1105 (N.D. Ill. 2015); *In re Facebook Biometric Info. Privacy Litig.*, 185 F.Supp.3d at 1171.

In *Rivera*, where the court ruled on this same issue after an exhaustive analysis of BIPA and the parties' competing interpretations, the court held that the specific materials or methods used to perform a facial geometric scan—of photographs or otherwise— were irrelevant to the definition of a biometric identifier. *Rivera*, 238 F. Supp. 3d at 1096. According to the court, "[t]he bottom line is that a 'biometric identifier' is not the underlying medium itself, or a way of taking measurements, but instead is a set of measurements of a specified physical component (eye, finger, voice, hand, face) used to identify a person." *Id*. The court then held that "there is no textual or structural clue to support" the notion that the exclusion of "photographs" from the definition of "biometric identifier" should mean that identifiers extracted from photographs are excluded *sub silencio* from the definition of a "biometric identifier." *Id*. The court concluded that "the list of biometric identifiers [in BIPA] are just that—specific, biology-based measurements used to identify a person, without reference to how the measurements were taken." *Id*. at 1097.

More recently, facing the same "photograph" argument Defendant makes here, the court in *IBM* held that IBM had "not offered any persuasive arguments to convince us" "that *Rivera* and other cases were wrongly decided." 2020 WL 5530134 at *5. So too here.[3]

Defendant's textual and structural argument that BIPA requires a facial scan to be conducted "in person" for the statute to apply is factually unsound and has been unanimously rejected by courts. Defendant incorrectly asserts that "everything included

---

[3] Plaintiffs do not claim that simply possessing a photograph of a face violates BIPA. It is the act of scanning or otherwise capturing Biometric Data from photographs that falls within BIPA's purview.

in the definition of 'biometric identifier' … can only be obtained with an actual person present." Dkt. 53 at 21. Not so. Voice prints can be derived from any form of recorded speech, and iris scans and fingerprints can all be derived from high-detail photographs,[4] just like the face geometry at issue here. Further, an "in person" requirement ignores § 15(b)'s plain language, which broadly prohibits any private entity from, among other things, obtaining Biometric Data without complying with BIPA's notice and consent requirements, without regard to how the data is obtained. *See* 740 ILCS § 14/15(b); *see also Monroy*, 2017 WL 4099846, at \*4 (rejecting claim that BIPA "is narrowly concerned with the use of biometric data in the context of commercial transactions" given its "notably broad" definition of "private entity"); *Rivera*, 238 F.Supp.3d at 1098 (emphasis in original) ("To be sure, the only *example* given in [BIPA] Section 5 relates to in-person transactions . . . but the stated concern is considerably broader than this one application."); *In re Facebook Biometric Info. Privacy Litig.*, 185 F.Supp.3d at 1171-72 ("this cramped interpretation is not stated in BIPA and cannot be squared with the statute's purpose.").

Defendant's related contention that scans of face geometry derived from photographs are excluded from the definition of "biometric identifier" because BIPA's definition of "biometric information" "does not include information derived from items or procedures excluded under the definition of biometric identifiers" (*see* Dkt. 53 at 22) ignores the authority above and would create a conflict between the two definitions. As discussed above, the definition of "biometric identifier" specifically *includes* scans of face geometry and makes clear that photographs themselves are not biometric identifiers. *See* 740 ILCS 14/10. Defendant seeks to delete this explicit statutory language through its interpretation of "biometric information." However, statutes should be interpreted to

---

[4]   *See*  https://www.forbes.com/sites/thomasbrewster/2015/03/05/clone-putins-eyes-using-google-images/#4520d710214a (last accessed Oct. 23, 2020); https://www.voicebiogroup.com/starting/considering-voice-biometrics.html#apply (it is important to note that VBG technology can work with almost any form of recorded speech) ((last accessed Oct. 23, 2020).

give meaning to all of their terms. *Dep't of Revenue v. Blixseth*, 942 F.3d 1179, 1185 (9th Cir. 2019).

Moreover, in *Rivera*, Defendant made precisely this argument for limiting the definition of a biometric identifier: "Google is arguing that if biometric information cannot be 'based on' something from the biometric-identifier paragraph's 'do not include' list (for example, 'photographs'), then an identifier may also not be 'based on' something from that same list." *Rivera*, 238 F. Supp. 3d at 1096. The court rejected it completely. "The problem with this argument is that there is no textual or structural clue to support it ... It would have been simple enough for the Illinois legislature to include similar 'based on' or 'derived from' language in the definition of 'biometric identifier,' but it did not." *Id*. at 1096-97. Ultimately, the Rivera court explained that the photograph exemption is a "just-to-be-sure exclusion[]" that makes it clear that exchanging or dealing in photographs themselves would not trigger the statutory obligation. "[I]f Google simply captured and stored the photographs and did not measure and generate scans of face geometry, then there would be no violation of the Act." *Id.* at 1097.

The court in *Rivera* also rejected the legislative history arguments that Defendant regurgitates here (Dkt. 53 at 23): "Because the text of [BIPA] provides the answer to whether the alleged face templates come within the definition of biometric identifier, there is no need to resort to legislative history." *Rivera*, 238 F.Supp.3d at 1098 (citation omitted); *Carcieri v. Salazar*, 555 U.S. 379, 388 (2009) (apply plain and unambiguous statutory text according to its terms). For the "sake of completeness," however, the court addressed Defendant's legislative history argument. *Rivera*, 238 F.Supp.3d at 1099. The court rejected the contention that by opting for the word "scan" over "records," the Illinois legislature suggested that it cared about how the content was obtained. *Id.* The court found that "scan . . . is not obviously more suggestive of something done directly to a *person* than to a *thing* (like a photograph)." *Id.* (emphasis in original). The court also addressed the legislature's decision to omit the term "facial recognition" from

BIPA, finding that it likely did so "simply because [the term] was redundant with 'facial geometry'" and because of grammatical issues.  *Id*. at 1099-1100.

Practically, it would make no sense for a statute aimed at an evolving technology to create the exception Defendant advocates. *See, e.g., id.* at 1096 ("because advances in technology are what drove the Illinois legislature to enact [BIPA] in the first place, it is unlikely that the statute sought to limit the definition of biometric identifier by limiting how the measurements are taken."); *Monroy*, 2017 WL 4099846, at *5 (limitation to in-person scans would "leave little room for the law to adapt and respond to technological development").

If adopted, Defendant's interpretation of BIPA would transform BIPA into a statute that specifically permits anyone—without notice or consent—to obtain, disclose, sell, or otherwise profit off any biometric measurements so long as they are extracted from photographs. "A federal court should not read a state law in a way that makes it self-defeating," and this Court should decline Defendant's invitation to turn BIPA into a license for unconstrained Biometric Data extraction.  *Morrison*, 649 F.3d at 538.

## IV.   Plaintiffs Have Adequately Alleged a § 15(b) Violation Because Defendant Collected, Obtained, and Used Their Biometric Data without Notice and Consent.

The Court should also refuse Defendant's invitation to read a "mere possession" exception into BIPA § 15(b). Dkt. 53 at 25-28. Contrary to Defendant's self-serving reading of BIPA, § 15(b) makes clear that it applies to any private entity that has collected or obtained a person's Biometric Data regardless of whether that entity personally scanned a photograph to derive the data or had a prior relationship with the individual: "No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's . . . biometric identifier or biometric information," unless it first provides written notice and receives written consent. *See* 740 ILCS § 14/15(b).

The Complaint specifically alleges Defendant's affirmative actions to collect and otherwise obtain Plaintiffs' and Class Members' Biometric Data by applying for and

1    obtaining the Dataset, which included Plaintiffs' and Class Members' Biometric Data,[5]

2    and using the Biometric Data to improve its facial recognition products. Dkt. 1 ¶¶ 55-

3    58. The Complaint further alleges that Defendant failed to provide the notice and obtain

4    the consent required by BIPA before collecting and obtaining the Biometric Data. *Id.*

5    ¶¶ 64-65, 72-73.  These allegations and the inferences therefrom are sufficient to allege

6    a § 15(b) violation. *See Figueroa v. Kronos, Inc.*, 454 F.Supp.3d 772, 783-84 (N.D. Ill.

7    2020).

8          The fact that §§ 15(a), (c), (d) and (e) contain the word "possess" does not change

9    the above-stated conclusion. The court in *Figueroa* rejected Defendant's argument,

10    noting that there is nothing inconsistent about the legislature's use of "collect' and

11    "otherwise obtain" in § 15(b) with its use of "in possession" in §§ 15(a), (c), (d), and (e)

12    because those sections apply to entities regardless of whether they obtained Biometric

13    Data before or after BIPA's effective date, while § 15(b) imposes obligations on entities

14    that came into possession of such data *after* BIPA's effective date. *Figueroa*, 2020 WL

15    1848206, at *6.

16          Nor does Section 15(b)'s use of "purchase" or "receive through trade" restrict

17    Section 15(b)'s application to entities who have paid for Biometric Data.  A litany of

18    courts have applied 15(b) where defendants have not purchased the Biometric Data.  *See*

19    *IBM*, 2020 WL 5530134, at *4-5; *Rivera*, 238 F.Supp.3d at 1092-1100; *Monroy* 2017

20    WL 4099846, at *2-5; *Norberg v. Shutterfly, Inc.,* 152 F.Supp.3d 1103, 1105 (N.D. Ill.

21    2015); *In re Facebook Biometric Info. Privacy Litig.*, 185 F.Supp.3d at 1171.  In any

22    event, Defendant's interpretation ignores Section 15(b)'s use of "collect" and "capture,"

23    which confirm BIPA's applicability beyond entity's purchase of Biometric Data.

24          Defendant's remaining authority does not require a direct relationship between

25    the plaintiff and defendant, nor does it require any more than a defendant's obtainment

26

27    [5] Further, Defendant knew or should have known that the Dataset contained individuals'

28    Biometric Data from photographs that were scraped from the Internet without their
knowledge or consent, as the methodology of building the Dataset was set forth in the
research papers accompanying and promoting the Dataset. *See* Dkt. 1 ¶¶ 40-46 (citing
Michele Merler, *et al., Diversity in Faces*, IBM Research AI (Apr. 10, 2019)).

of Biometric Data. Instead, it merely requires specific allegations describing Defendant's affirmative actions in obtaining the biometrics. *See Bernal v. ADP, LLC*, No. 2017-CH-12364, Order at 2-3 (Cook Cty. Ill. Cir. Ct. Aug 23, 2019) ("Plaintiff has failed to allege facts sufficient enough for the Court to properly assess Defendant's actual involvement . . . beyond the fact that Defendant supplied [the employer] with the technology . . . . Plaintiff's Complaint must include factual allegations of what Defendant's role relative to Plaintiff's biometric information is.") (Lange Decl., Ex. A); *Heard v. Becton, Dickinson & Co.*, 440 F.Supp.3d 960, 967 ("As in *Bernal*, [plaintiff's] allegations do not enable the court to 'assess [the defendant's] actual involvement' in the alleged collection of biometric data."); *Namuwonge v. Kronos, Inc.*, 418 F.Supp.3d 279, 286 (N.D. Ill. 2019) (declining to pass on question because the plaintiff alleged only that her employer had "collected [her] fingerprints using a system that [timekeeping device manufacturer] supplied," and not that "[manufacturer] collected, captured, or otherwise obtained [her] biometric information.").

BIPA's language confirms that a private entity must provide notice to and obtain consent from, not only "customers" (direct relationship), but any person. 740 ILCS 14/15(b); *see also Rosenbach*, 129 N.E.3d at 1206 ("individuals and customers" have the right to control their Biometric Data); *Norberg*, 152 F. Supp. 3d at 1105 (plaintiff alleged § 15(b) violation despite averring having never used the defendant's website); *Monroy*, 2017 WL 4099846, at *1 (finding plausible BIPA claims against defendant where the plaintiff did not use Shutterfly).

Nor does Defendant's repeated reliance on dicta in *Bernal* counter the overwhelming authority rejecting the notion that BIPA has a "direct relationship" requirement. In *Bernal*, the court merely observed that because the plaintiff could have withheld consent to use his Biometric Data from his employer, the court did not believe that a third-party vendor also had to obtain consent. *Bernal*, Order at 2-3 (Lange Decl., Ex. A). Here, Plaintiffs did not have the opportunity to withhold consent either from

1  IBM or Defendant, and IBM and Defendant were in the same position with respect to
2  their ability to give notice and obtain consent prior to capturing Biometric Data.[6]

3  Importantly, Defendant could have complied with BIPA's notice and consent
4  requirements before obtaining Plaintiffs' and Class Members' Biometric Data, as set
5  forth *supra*. Defendant could have asked IBM to initially provide it with the metadata
6  for all photographs in the Dataset, as well as the contact information for the relevant
7  Flickr users. Likewise, Defendant could have asked IBM to initially provide a version
8  of the Dataset without the Biometric Data, and then used the information therein to
9  provide the requisite notice and obtain the requisite consent. Instead, Defendant took no
10 action to obtain the requisite consent or provide the requisite notice. *See id.* ¶¶ 65-66,
11 73-74, 79.

12 Defendant, of course, has lawful options at its disposal for acquiring faceprints
13 for its facial recognition technology research—it could, for example, arrange to meet
14 with individuals in person to provide notice and obtain their consent and faceprints in a
15 manner compliant with BIPA, rather than going behind their backs to download their
16 photographs without their knowledge or consent.

17 **V.   Plaintiffs Have Adequately Alleged that Defendant Profited from the**
      **Biometric Data of Plaintiffs and Class Members.**
18

19 The Complaint alleges that Defendant used Plaintiffs' and Class Members'
20 Biometric Data to improve its facial recognition products and generate profits. Dkt. 1
21 ¶¶ 52-59, 77. The Complaint further alleges that Defendant violated BIPA § 15(c),
22 which precludes a private entity from selling, leasing, trading or otherwise profiting from
23 a person's Biometric Data. 740 ILCS 14/15(c).

24 Despite BIPA's plain language, Defendant contends that the Court should ascribe
25 something other than the plain meaning to the term "profit from." Dkt. 53 at 28-30. The

26

27 _____
   [6] Plaintiffs note that, based on available information, Yahoo! was not required to comply
28 with BIPA because it did not collect or obtain Biometric Data. Rather, it made
   photographs uploaded to Flickr accounts publicly available. *See* Dkt. 1 ¶¶ 28-32 It is
   possible that Yahoo!'s conduct violated other laws.

Supreme Court has "stated time and time again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992). Thus, courts must stop with a statute's unambiguous language. *Id.*

Ignoring the above canon of statutory interpretation, Defendant contends that the Court can only read the phrase "otherwise profit from" to apply to the "exchange of biometric data for money or some other valuable consideration." Dkt. 53 at 28. The authority relied on by Defendant only addresses statutory clauses that describe "several classes of *persons or things*" and then includes "other persons or things." *Id.* at 28-29 (citing *Pooh-Bah Enter., Inc v. Cnty of Cook*, 905 N.E.2d 781, 799 (Ill. 2009) (emphasis added)). Section 15(c) does not describe "several classes of persons or things." *See* 740 ILCS 14/15(c). Rather, it sets forth a series of verbs followed by the phrase or "otherwise profit from." *Id.* Notably, the phrase "otherwise profit from" does not encompass or otherwise render the preceding words superfluous, which was the concern in *Pooh-Bah Enter., Inc. See Pooh-Bah Enter., Inc.*, 905 N.E.2d at 799-800. A private entity can sell, lease or trade items with generating a profit—*e.g.*, the entity can sell the items at a loss or break even. Thus, § 15(c)'s use of the phrase "otherwise profit from" has a meaning independent from the words that precede it, and the Court should give the phrase its plain meaning. Defendant cannot invoke canons of construction to twist § 15(c)'s plain language into a nonexistent limitation.

Moreover, Defendant's invasive and predatory practice of collecting Illinois residents' Biometric Data without their knowledge or consent is the very conduct that BIPA was designed to thwart. BIPA's purpose is plainly *not* to grow and incentivize the profitably of defendants who secretively use Illinois' residents Biometric Data, as Defendant would have this Court believe.  Quite the opposite, BIPA works to prohibit such conduct by codifying "that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach*, 129 N.E. 3d at 1206.

Defendant's contention that Plaintiffs' claim under § 15(c) fails because they have not shown that Defendant profited from the Biometric Data at issue (Dkt. 53 at 29-30) improperly ignores the Complaint's allegations and views the Complaint in the light most favorable to Defendant. *See* Dkt. 1 ¶¶ 53, 57-58. Moreover, the fact-based contention is premature. Discovery will reveal the exact extent to which Defendant profited from Plaintiffs' and Class Members' Biometric Data, along with the details of how Defendant used that data to generate profits.

**VI.   Plaintiffs Have Adequately Pled a Claim for Unjust Enrichment.**

In support of their unjust enrichment claim, Plaintiffs allege that Defendant unfairly profited from its use of Plaintiffs' and Class Members' Biometric Data when it used the data to develop, improve, and sell its own facial recognition technology. Dkt. 1 ¶¶ 52-58.   As the court found in *IBM*, these allegations state a claim for unjust enrichment under Illinois law. *See* 2020 WL 5530134, at *5.

Plaintiffs note that they plead unjust enrichment in the alternative to their BIPA claims, which is allowable under both Illinois and California law. *See Quadion Corp. v. Mache*, 738 F.Supp. 270, 278 (N.D. Ill. 1990); *Rjojas v. Bosch Solar Energy Corp.*, 443 F. Supp. 3d 1060, 1074 (N.D. Cal. 2020). If required by the Court, Plaintiffs can specifically plead unjust enrichment in the alternative. And Plaintiffs' unjust enrichment claim cannot be dismissed for the same reasons their other claims are well-pled, as elaborated *supra. See IBM*, 2020 WL 5530134, at *5, fn. 2 (declining to consider defendant's same argument because it did not dismiss the BIPA claims).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion to dismiss as to Counts One through Three of the Complaint (Plaintiffs do not contest the motion as it relates to Count Four). To the extent the Court grants the motion, the Court should grant Plaintiffs the opportunity to file an amended complaint.

Dated: December 18, 2020             **CARLSON LYNCH LLP**

By:  */s/(Eddie) Jae K. Kim*
            (Eddie) Jae K. Kim (SBN 236805)

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CARLSON LYNCH LLP**
117 E. Colorado Blvd, Suite 600
Pasadena, CA 91105
Tel:    (619) 762-1910
ekim@carlsonlynch.com

Gary Lynch (*pro hac vice*)
**CARLSON LYNCH LLP**
1133 Penn Avenue, Floor 5
Pittsburgh, PA 15222
Tel.:  (412) 322-9243
glynch@carlsonlynch.com

Katrina Carroll (*pro hac vice*)
Nicholas R. Lange (*pro hac vice*)
**CARLSON LYNCH LLP**
111 West Washington Street, Suite 1240
Chicago, Illinois 60602
Tel.:  (312) 750-1265
kcarroll@carlsonlynch.com
nlange@carlsonlynch.com

Megan Pierce (SBN 314044)
Michael Kanovitz (*pro hac vice*)
Scott R. Drury (*pro hac vice*)
**LOEVY & LOEVY**
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
Tel.:  (312) 253-5900
Fax:   (312) 243-5902
megan@loevy.com
mike@loevy.com
drury@loevy.com

*Attorneys for Plaintiffs and*
*Proposed Class Counsel*

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S AMENDED MOTION TO DISMISS
Case No. 2:20-cv-06244-DMG-KS